The plaintiff averred that this deed was executed with an intent to procure the emancipation of the slaves, and that being against the policy of the law, a trust resulted for his testatrix. The bill prayed for a reconveyance of the slaves, and for an account of the profits received by the defendant.
The defendant in his answer denied that there was any trust between him and the plaintiff's testatrix to procure the emancipation of the slaves conveyed to him; or that he had agreed to hold them in any way but that mentioned in the deed, and insisted that the deed was executed by the testatrix from a wish to do him (the defendant) a favor.
Replication was taken to the answer, and witnesses examined. Among them, the register, Mr. Ellison, swore that when the defendant came to have the deed registered, he observed that the old lady had conveyed the negroes to him for the purpose of having them emancipated.
A copy of the will of the plaintiff's testatrix was by him filed as an exhibit in the cause.
NORWOOD, J., on the Spring Circuit of 1829, declared that the defendant held the slaves as a bare trustee; that the trust was one contrary to the policy of the law, and resulted for the benefit of the plaintiff, and decreed a reconveyance by the defendant, upon having the consideration money refunded to him, and directed an account of the rents and proofs. From which the defendant appealed.
Were this donation by will, and the object to emancipate, Haywood v.Craven, 4 N.C. 360, is an authority to show that a trust results to the heir at law and next of kin. If the object be to hold the negroes, not as property, but in a qualified state of bondage, Huckaby v. Jones, 9 N.C. 120, shows that a trust also results. It is unimportant, therefore, to inquire whether the object of the parties was that the defendant should emancipate the slaves, or that he should continue to hold them in the manner pointed out in the deed.
His Honor then stated the declaration of trust as above, and proceededas follows: These trusts exclude the idea that he should hold the negroes as property. And the policy of the law forbids that they should be held otherwise. The trust, therefore, falls off, and the defendant holds them as property freed from the trust, or the beneficial interest results to the grantor, or, rather, never was out of her. I shall not examine the cases which were cited and commented on at the bar. They all go to prove that unlawful trusts, motives or intents render the grant void or not, as will best tend to suppress the illegal act or intent *Page 297 
contemplated. Or if they do not render the grant void, they either (496) fall off or result as will best effect the same object. And here it is observable that there is no base design on the part of the maker to do an immoral act, to cheat or defraud another. The act is forbidden only by the stern policy of the State, necessary to support our institutions in regard to slaves; but there is nothing malum in se in the act. Nor did she attempt to conceal or disguise her object, but place it in her deed, to be put on the public records. There is nothing, therefore, which forbids this Court to give to her her legal rights. We cannot say that her hands are unclean; and therefore we will not aid her, or give her that which in strict right she may be entitled to; for sensitive as we are and ought to be as to whatever may interfere with our laws on the question of slaves, and however severely we may punish and ought to punish those who, in the most remote manner, attempt to weaken the bonds by which we hold them, yet these sensibilities are not roused or acted on against a single female who from feelings of kindness towards her three or four slaves, or from feelings of conscience, endeavors to better their condition, who has acted openly, and who from the publicity which she has given to her act did not intend to offend against the law. It is sufficient for her to feel the direct effects of her unlawful act, without also subjecting her to its indirect effects. This consideration frees this case at once from the operation of those cases where a fraudulent or dishonest grantor comes into this Court to annul his deed. Against her merits the defendant has none. He is a mere volunteer, and now attempts to hold the negroes as slaves in fraud of his agreement with her. Sound policy, perhaps, would require that the slaves should be forfeited. But we have no authority to make, only to declare, the law.
Had this case arisen on a will, there would not have been even an argument attempted to disprove a resulting trust. But being in a deed, it is said that no such trust arises. And the reason assigned for this difference is that in a will the intent alone is regarded, which shall be executed; but not so in a deed. Is this rule applicable to the (497) present case? It is true that certain technical words are required by law to express certain intents in a deed: the word "heirs" to denote that perpetuity necessary to give a fee simple; the words "heirs of the body" to create an estate tail. But in a will, no particular words are necessary to denote an intent; any significant words will do. But when the intent is thus fixed and ascertained, the thing created possesses the same qualities, whether created by the technical words required in a deed or the significant words required in a will. A fee simple is a fee simple, and nothing more or less, whether created by deed or will; and the law will not permit an illegal estate to be created by either. Nor can an estate, which would be illegal if created by deed, be legal because created *Page 298 
by will. Neither can qualities be given to it by one which it is unlawful to give to it by the other, or which the other cannot give. That a different rule prevails in arriving at the intent, that a word would create a thing in the one which it would not in the other, is admitted. But this is a rule in regard to the construction of the instrument. There can be no reasons for raising a resulting trust for the heir which does not equally operate to raise one for the grantor. It is said that the heir takes all that the ancestor does not devise to another. The grantor retains all that he has not given away; and if the grantee cannot take the beneficial interest, it remains in the grantor; for to every grant there must be a grantee — a taker. It is said that the grantor had forfeited her estate by attempting an illegal trust. So has the devisor, and his heir takes nothing but what his ancestor had at his death. It is said the forfeiture is inflicted on him to prevent the commission of such acts. Our own feelings, nay, our holy religion, tells us that we are more restrained by punishment to be inflicted on our children for our crimes than on ourselves. So that policy is on the other side. I cannot, therefore, distinguish this case from a similar disposition made (498) in a will.
RUFFIN, J., concurred.